United States District Court
Southern District of Texas
**ENTERED**
November 01, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DAVID JESUS ARAUJO PEREZ, VANESSA CAROLINA VASQUEZ de ARAUJO, JUAN DAVID ARAUJO VASQUEZ, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | |
| ANTONY J. BLINKEN, U.S. SECRETARY OF STATE, U.S. DEPARTMENT OF STATE; ALEJANDRO NICHOLAS MAYORKAS, U.S. SECRETARY OF HOMELAND SECURITY, DEPARTMENT OF HOMELAND SECURITY; UR M. JADDOU, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES; WALLACE L. CARROLL, FIELD OFFICE DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, HOUSTON FIELD OFFICE | § § § § § § § § § § § § § § | CIVIL ACTION NO. H-21-3143 |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

David Jesus Araujo Perez; his wife, Vanessa Carolina Vasquez de Araujo; and his son, Juan David Araujo Vasquez, are natives and citizens of Venezuela. (Docket Entry No. 1, at 5). The family arrived in the United States on nonimmigrant visitor visas on January 13, 2016. They were authorized to remain in the United States under nonimmigrant visitor status until July 12, 2016. (*Id.*, at 11; Docket Entry No. 2, at 6). Before their visitor status expired, Araujo Perez applied for asylum in the United States for himself and derivatively for his wife and son. (*Id.*). The family's visitor status expired on July 12, 2016, but they remained in the United States. As asylum applicants, they were not subject to removal during the pendency of their asylum

application.  (Docket Entry No. 2, at 9).  Their asylum application "remains 'pending' and unadjudicated at the local USCIS asylum office."  (Docket Entry No. 1, at 11).  It has been pending since 2016.

Nearly four years after entering the United States, on June 6, 2020, with the asylum application still pending, Araujo Perez was "notified by the United States Department of State that he was selected for further processing in the Diversity Immigrant Visa Program" for Fiscal Year 2021.  That fiscal year ran from October 1, 2020 to September 30, 2021.  (Docket Entry No. 1, at 11).  "[T]o qualify as a [Diversity Visa] immigrant . . . an applicant must be granted adjustment of status during the fiscal year for which he or she was selected."  (Docket Entry No. 2-1, at 5).  Araujo Perez "informed the United States Department of State of his intent to apply for adjustment of status with [the United States Citizenship and Immigration Services (USCIS)]," and "[o]n March 25, 2021, [he] filed [the] Form I-485 [for adjustment of status] with USCIS based on being selected under the Diversity Visa (DV) lottery for FY 2021."  (Docket Entry No. 1, at 11).

On June 14, 2021, the USCIS interviewed Araujo Perez to determine his eligibility to adjust status.  (*Id.*).  The next day, the USCIS denied his application to adjust status "because he [was] not in lawful immigration status on the date of filing his Form I-485," and he had "failed to maintain lawful status since . . . his entr[y] into the United States."  (Docket Entry No. 2, at 1).

Araujo Perez timely filed a Form I-290B Notice of Appeal of Motion, asking the USCIS to reconsider its decision denying his application to adjust status.  (Docket Entry No. 1, at 12).  On September 17, 2021, the USCIS denied the motion to reconsider.  (*Id.*).  Ten days later, on September 27, 2021, Araujo Perez filed this action under the Administrative Procedure Act, (Docket Entry No. 1), asking this court to enter a temporary restraining order, or alternatively a

2

preliminary injunction, requiring the defendants "to reserve diversity visa numbers [for Araujo Perez and his family] pending final resolution of this matter and to renew any Fiscal Year 2021 diversity visas that expire after the end of the fiscal year as necessary to permit the visa recipients to have a reasonable opportunity to adjust status."  (Docket Entry No. 1, at 3).  The defendants are officials of the U.S. Department of State, Department of Homeland Security, USCIS, and the Houston field office of the USCIS.

The defendants moved to dismiss Araujo Perez's complaint under Federal Rule of Civil Procedure 12(b)(6) on September 30, 2021.  (Docket Entry No. 2).  The next day, the defendants supplemented their motion to dismiss, arguing that dismissal was required because the case had become moot at 11:59 p.m. on September 30, 2021, when the fiscal year during which a diversity visa could issue ended.  (Docket Entry No. 4).  The court heard argument on the motions on October 4, 2021.  At the hearing, the court denied the plaintiffs' request for a temporary restraining order and took under advisement the plaintiffs' motion for a preliminary injunction and the defendants' motion to dismiss.  (Docket Entry No. 5).  Following the hearing, the plaintiffs responded to the motion to dismiss, and the defendants replied.  (Docket Entries Nos. 6, 7).  Based on the motion, the briefs, the arguments, and the applicable law, the court now denies the plaintiffs' motion for a preliminary injunction, Docket Entry No. 1, and grants the defendants' motion to dismiss, Docket Entries Nos. 2 and 4.  The reasons are stated below.

## I.    Background

Under the Immigration and Nationality Act, Congress provided that up to 55,000 diversity visas may be issued "each fiscal year to foreign nationals that hail from countries with historically low levels of immigration to the United States."  *Nishihata v. Blinken*, No. 21-2173, 2021 WL 4476750, at *1 (D.D.C. Sept. 30, 2021) (citations omitted); 8 U.S.C. §§ 1151(e),

1153(c).  "Millions of hopefuls enter a lottery for the chance to apply for one of the 55,000 allotted diversity visas."  *Id.* (quoting *Filazapovich v. Dep't of State*, No. 21-cv-943, 2021 WL 4127726, at *2 (D.D.C. Sept. 9, 2021)).  "The winners of the lottery 'submit an application and various documents to be eligible for a visa number,'" *id.* (quoting *Almaqrami v. Pompeo*, 933 F.3d 774, 776–77 (D.C. Cir. 2019)), but "each diversity visa selectee is not guaranteed a diversity visa because more lottery winners and beneficiaries [are] selected than there are available diversity visas."  *Filazapovich v. Dep't of State*, No. 21-2228, 2021 WL 4476844, at *5 (D.D.C. September 30, 2021).  "By law, diversity visas must be awarded before midnight on the last day of the fiscal year for which an applicant was selected to apply."  *Ermuraki v. Renaud*, 987 F.3d 384, 385 (5th Cir. 2021) (citing 8 U.S.C. § 1154(a)(1)(I)(ii)(II); 22 C.F.R. § 42.33(f)).

Araujo Perez was selected to apply for a diversity visa for fiscal year 2021.  On March 25, 2021, he applied for the visa and for adjustment of status for himself and, derivatively, his wife and son.  The USCIS interviewed Araujo Perez and denied him adjustment of status. (Docket Entry No. 1, at 11).  The fiscal year for issuance of the diversity visa which Araujo Perez had been invited to apply expired at 11:59 p.m. on September 30, 2021.  (*Id.*, at 3; Docket Entry No. 4, at 1).

Under 8 U.S.C. § 1255(c)(2), adjustment of status cannot be granted to an applicant (1) "who is in unlawful immigration status on the date of filing the application for adjustment of status" or (2) "who has failed (other than through no fault of his own or for technical reasons) to maintain a lawful status since entry into the United States."  On June 15, 2021, the USCIS issued a six-page decision letter, denying Araujo Perez's application for adjustment of status because he was not in, and had not maintained, "lawful immigration status."  (Docket Entry 2-1, at 2, 5).  In

the June 15, 2021 denial decision, the USCIS cited a Department of Homeland Security regulation that defines "lawful immigration status" as "limited to six categories":

> (i) In lawful permanent resident status; (ii) An alien admitted to the United States in nonimmigrant status as defined in section 101(a)(15) of the Act, whose initial period of admission has not expired or whose nonimmigrant status has been extended in accordance with part 214 of this chapter; (iii) In refugee status under section 207 of the Act, such status not having been revoked; (iv) In asylee status under section 208 of the Act, such status not having been revoked; (v) In parole status which has not been expired, been revoked or terminated; or (vi) Eligible for the benefits of Public Law 101-238 (the Immigration Nursing Relief Act of 1989) and files an application for adjustment of status on or before October 17, 1991.

8 C.F.R. § 245(d)(1); Docket Entry No. 2-1, at 5.

The USCIS determined that Araujo Perez did not fit into any of these categories of lawful status.  First, Araujo Perez's lawful nonimmigrant status under his six-month visitor visa had expired in July 2016, and Araujo Perez had not filed to extend or change his lawful nonimmigrant status.  (Docket Entry 2-1, at 7).  Araujo Perez's asylum filing "prior to the expiration of [his visitor] nonimmigrant status" was not "an effective extension of that lawful nonimmigrant status."  (*Id.*, at 5).  Second, Araujo Perez was not "[i]n asylee status."  (*Id.*).  In the June 15, 2021, denial letter, the USCIS noted that the definition of asylee status under 8 C.F.R. § 245.1(d)(1) "clearly excludes applicants for asylum (not those who have been granted refugee or asylee status within the scope of the INA)."  (*Id.*).

In its decision, the USCIS also determined that Araujo Perez did not have a "technical reason" for failing to maintain lawful status since his entry to the United States.  The USCIS noted that Araujo Perez's attorney had "assert[ed] that [Araujo Perez] [was] statutorily eligible to adjust status" based on the Board of Immigration Appeals decision in *Matter of L-K*, 23 I&N Dec. 677 (BIA 2004).  The USCIS stated that it had reviewed the decision and determined that it "did not specifically address [Araujo Perez's] situation."  (*Id.*, at 6).  The USCIS also stated that

"the examples of a 'technical violation' listed in 8 CFR 245.1(d)(2)(ii) through (iv) make it apparent that the expiration of nonimmigrant visa status while an asylum application is pending does not fall within the realm of a technical violation."  (*Id.*).  The USCIS stated that Araujo Perez had not "established eligibility" for adjustment of status, and it "den[ied his] Form I-485" request.  (*Id.*, at 7).

Araujo Perez filed a Motion to Reconsider USCIS's denial of his Form I-485 request to adjust status.  (*Id.*, at 2).  On September 17, 2021, the USCIS denied the motion to reconsider.  In its denial, the USCIS wrote: "In a letter dated July 12, 2021, your counsel of record concedes that USCIS's 'interpretation that the definition of 'lawful immigration status,' as defined by DHS's regulations at 8 CFR 245.1(d)(1) does not include applicants for asylum.'"  (*Id.*).  The USCIS again noted that Araujo Perez's nonimmigrant legal status had expired on July 12, 2016, and he had not then sought to, or otherwise maintained, lawful status.  (*Id.*, at 3).  Because Araujo Perez failed to "establish[] eligibility" for adjustment of status, the USCIS denied the motion to reconsider.  (*Id.*).

## II.    Analysis

"There are no contested facts in this case, only contested applications of those facts to a few relevant concepts under immigration law."  *Dhuka v. Holder*, 716 F.3d 149, 152 (5th Cir. 2013).  The parties agree that Araujo Perez was not in lawful status when he filed to adjust status and that he and his family have not been in lawful status since July 2016.  The parties agree that Araujo Perez has a pending asylum application, and that the application alone does not confer lawful status.  Araujo Perez argues that the USCIS wrongly denied his application for adjustment of status because his failure to maintain lawful status was for the "technical reason" that he had a pending asylum application.  (Docket Entry No. 1, at 12).

Araujo Perez argues that denying the application to adjust status was "arbitrary and capricious," and therefore violated the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., because the defendants "refuse[d] to follow" the Board of Immigration Appeals decision in *Matter of L-K*, 23 I&N, Dec. 677 (BIA 2004).  (*See* Docket Entry No. 1, at 3 ("The immigration agencies arbitrarily and capriciously disregard precedential authority: the Board of Immigration Appeal's decision in *Matter of L-K*"); *id.*, at 4 ("Neither defendants nor the public has any valid interest in NOT reserving the diversity visas beyond FY 2021 for the sole and arbitrary reason that Defendants refuse to follow Board of Immigration Appeal's . . . precedent in *Matter of L-K*"); *id.*, at 8 ("The evidence in this case shows at least a substantial likelihood that defendants' manner of misinterpreting the BIA precedent in *Matter of L-K* is what is preventing Plaintiffs' from adjusting status")).  Araujo Perez argues that the USCIS's "refusal to follow BIA precedent require[d the] agency to provide adequate reasons for its reversal." (Docket Entry No. 1, at 3, 12, 13–16, 20).  Araujo Perez argues that because the USCIS did not give adequate reasons for deviating from *Matter of L-K*, its decision denying him adjustment of status was arbitrary and capricious.  (*Id.*).

The first issue is whether the court lacks jurisdiction because the issue is moot.  *Wagner v. Campuzano*, 548 F. App'x 133, 134 (5th Cir. 2013).  "[M]ootness is a threshold jurisdictional inquiry."  *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004).  "[A] claim becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Ermuraki*, 987 F.3d at 386 (quoting *La. Env't Action Network*, 382 F.3d at 581).  "Mootness applies" here if "intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff."  *Id.* (quoting *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013)).

Araujo Perez asks this court "to reserve diversity visa numbers [for Araujo Perez and his family] pending final resolution of this matter and to renew any Fiscal Year 2021 diversity visas that expire after the end of the fiscal year as necessary to permit the visa recipients . . . a reasonable opportunity to adjust status." (Docket Entry No. 1, at 3). The Fifth Circuit recently held, however, that a court cannot grant relief to a diversity visa applicant after the fiscal year for the visa ends. *See Ermuraki*, 987 F.3d at 385. The fiscal year for the diversity visa that Araujo Perez applied for ended after 11:59 p.m. on September 30, 2021. Mootness is not avoided because Araujo Perez applied for relief from this court before that date, on September 27, 2021.

In *Ermuraki v. Cuccinelli*, the plaintiffs, a husband and wife, sued officials of the Department of Homeland Security and the USCIS, after their application for adjustment of status was denied. No. 19-4169, 2020 WL 3402855, at *1 (S.D. Tex. June 19, 2020). Similar to Araujo Perez, the plaintiffs had originally arrived in the United States "by virtue of six-month B-2 tourist visas." *Id.* Before their tourist visas expired, the husband filed an asylum petition, and his wife and son applied as derivative applicants. *Id.* Two years later, while the asylum petitions were still pending, the wife entered the diversity visa lottery for fiscal year 2019 and was invited to apply. *Id.* The USCIS denied her application to adjust status because she had not maintained lawful status. *Id.* The *Ermuraki* plaintiffs, like Araujo Perez, alleged that the denial of the application to adjust status was arbitrary and capricious under the Administrative Procedure Act, arguing that the unadjudicated asylum petition gave them a "technical reason" for their failure to maintain lawful status. The court dismissed under Rule 12(b)(6), holding that "[t]he actions taken by the Defendants were not arbitrary or capricious" because "the plaintiffs mere filing of [an asylum application], without more, did not create or establish any new 'lawful' status on their behalf." *Id.* at *5.

On appeal, the Fifth Circuit vacated and dismissed, holding that the district court should have dismissed the *Ermuraki* plaintiffs' claim as moot instead of "resolv[ing the] case on the merits." 987 F.3d at 385. The appellate court stated that the claim was moot because the plaintiffs filed their complaint in district court challenging the denial of a diversity visa status adjustment almost one month after the relevant diversity visa fiscal year had ended. *Id.* The court noted that other courts of appeals "ha[d] overwhelmingly concluded" that "a claim challenging the denial of a diversity visa status adjustment application becomes moot after the relevant fiscal year expires." *Id.* at 386 (citing cases). The Fifth Circuit "f[ound] the reasoning of [its] sister circuits persuasive." *Id.* at 387.

Araujo Perez filed his complaint in district court three days before the fiscal year ended. That does not save the claim from mootness. Section 1154(a)(1)(I)(ii)(II) states that "[a]liens who qualify, through random selection, for a visa under section 1153(c) of [Title 8] shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II). The corresponding regulations state that "[u]nder no circumstances will immigrant visa numbers be allotted after midnight of the last day of the fiscal year for which the petition was submitted and approved." 22 C.F.R. § 42.33(f); *see also id.* § 42.33(a)(1) ("The eligibility for a visa . . . ceases at the end of the fiscal year in question.").

As the decisions cited in *Ermuraki* concluded, "the language Congress used precludes [the USCIS] from issuing a visa pursuant to the [Diversity Visa] Program for a given fiscal year upon the expiration of that fiscal year." *Coraggioso v. Ashcroft*, 355 F.3d 730, 734 (3d Cir. 2004); *see also Carillo-Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir. 2003) ("[T]he doctrine of equitable tolling has no application in cases involving the Congressionally-mandated, one-year deadline of the DV Lottery Program.").

9

The court cannot compel the defendants to process a diversity visa to Araujo Perez or his family after the fiscal year has ended, even if that is the only way to adjust them to lawful status, because the defendants do not have "the statutory authority" to issue Araujo Perez a diversity visa now that the 2021 fiscal year has ended. *Mohamed v. Gonzales*, 436 F.3d 79, 80 (2d Cir. 2006); *Mwasuru v. Napolitano*, 619 F.3d 545, 551 (6th Cir. 2010) ("[S]imply put, '[t]he diversity visa program is a limited-time offer,' and '[t]hose not receiving visas must, with Sisyphean frustration, go back to the starting line and reapply to the lottery.'" (citations omitted)); *cf. Zixiang Li v. Kerry*, 710 F.3d 995, 1002 (9th Cir. 2013) ("It does not matter whether administrative delays and errors are to blame for an alien not receiving a visa number on time. Once a visa number is gone, it cannot be recaptured absent an act of Congress.").

Araujo Perez argues that, despite the Fifth Circuit's decision in *Ermuraki*, the claim for relief is not moot. He cites *Gomez v. Trump*, 490 F. Supp. 3d 276 (D.D.C. 2020), for support. In *Gomez*, the named plaintiffs sought class certification to challenge an executive policy that stopped diversity-visa processing for fiscal year 2020. In an earlier decision, the district court held that the U.S. Department of State had "arbitrarily and capriciously refused to review and adjudicate" Diversity Visa "Selectees' visa applications" for fiscal year 2020 and had "unreasonably delayed in processing those applications." *Id.* at 281 (citing *Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020)). The court had "ordered Defendants to 'undertake good faith efforts, directly and through their designees, to expeditiously process and adjudicate DV-2020 diversity visa and derivative beneficiary applications and issue or reissue diversity and derivative beneficiary visas to eligible applicants by September 30, 2020." *Id.* By September 30, 2020, the last day of the fiscal year, however, "approximately 40,000 of the 55,000 diversity visas Congress . . . made available for Fiscal Year 2020 remain[ed] unissued." *Id.*

10

The *Gomez* plaintiffs returned to district court to seek "additional relief" as "necessary both to cure [the] Defendants' failure to comply in good faith with the court's previous order, and to adequately remedy the harms experienced by DV-2020 Selectees as a result of [the] Defendants' months-long refusal to process DV-2020 visa applications." *Id.* at 282.  The court stated that "the State Department reasonably and realistically could have issued" 9,095 diversity by "the end of the fiscal year," but that the State Department had not done so.  *Id.* at 290.  The court ordered "the State Department to reserve 9,095 diversity visa numbers after September 30, 2020, for the future processing of the Named Plaintiffs' and class-members' diversity visa applications, pending final adjudication of t[he] matter."  *Id.* at 295.

The *Gomez* decision suggests that a court could require the State Department to reserve diversity visas for the fiscal year after the year which the diversity visa was sought.  That would mean that this court could order the State Department to reserve a diversity visa and derivative visas for Araujo Perez, his wife, and child, for fiscal year 2022, and order the USCIS to reconsider and process their diversity visa applications in 2022.  But *Gomez* is distinguishable.

In *Gomez*, the next fiscal year had not started when the court ordered the State Department to reserve visas for that year.  No visas had yet been issued for that fiscal year.  In this case, the 2022 fiscal year started on October 1, 2021.  The application period for the 2022 fiscal year closed in November 2020.  Requiring the USCIS to reserve or issue Araujo Perez and his family diversity visas for fiscal year 2022 would result in taking visas already allocated to other diversity visa applicants.  *Cf. Zixiang Li*, 710 F.3d at 1009 ("There is no statute or regulation authorizing [the Department of State] to take a visa number from one year and allocate it to another year. . . .  [T]he visa numbers [the plaintiffs] seek to recapture have already been allocated to other individuals.").  The court would be "direct[ing] government resources

from the adjudication of other visa applications." *Nishihata*, 2021 WL 4476750, at *8 (quotation marks omitted).

Additionally, this court does not have the basis to act that the *Gomez* court relied on in ordering the State Department to reserve diversity visas to issue after the fiscal year.  In *Gomez*, the district court had ordered the State Department to expeditiously process and adjudicate— before the end of the fiscal year—the *Gomez* plaintiffs' diversity visa and derivative beneficiary applications.  Because the court later determined that the State Department had not complied with its order, the court held that "'the expiration of the statutory deadline' did not 'extinguish[] the [defendants'] obligation to comply with the court's order.'"  490 F. Supp. 3d at 284 (citation omitted).  In *Gomez*, "the court ha[d] ordered the Government to act on a diversity visa application" within the deadline for the visa to issue.  As a result, the *Gomez* court "ha[d] the power to vindicate its own order' by compelling post-deadline adjudication."  *Id.* at 284 (quoting *Przhebelskaya v. USCIS*, 338 F. Supp. 2d 399, 403–04 (E.D.N.Y. 2004)).  In so holding, the *Gomez* court clarified that the case was not one that should be "dismissed as moot because the plaintiff filed too late or the court did not act in time."  *Id.* at 285 (quoting *Almaqrami*, 933 F.3d at 782).  Instead, the court relied on its equitable authority to later enforce its timely issued order for the government to act.

Other decisions enforce the reasoning of *Gomez*.  In *Paunescu v. INS*, 76 F. Supp. 2d 896, the district court ordered the Immigration and Naturalization Service to process the plaintiffs' diversity visas, even though the fiscal year had already ended.  *Id.* at 902–03.  The plaintiffs in that case "were the victims of a bureaucratic nightmare" that was worse than the usual immigration quagmire.  *Id.* at 902.  The defendants in *Paunescu* had "received plaintiffs' [adjustment of status] applications . . . over ten months before the end of the fiscal year."  *Id.* at

901–02.  The plaintiffs were then "informed that their applications were complete but for their fingerprint card."  *Id.* at 902.  "Over the next seven months plaintiffs made repeated efforts to force defendants to perform the one ministerial act"—processing the fingerprint card—"that would complete their applications."  *Id.*  The defendants instead waited until after the fiscal year expired to send the fingerprint card to the FBI for clearance.  *Id.*  Before the fiscal year ended, the plaintiffs in *Paunescu* "moved for preliminary injunctive relief" in the district court.  *Id.* at 898.  After a hearing, "the court ordered defendants to 'immediately complete adjudication of the applications for adjustment status' for both plaintiffs without delay and by no later than September 30, 1998."  *Id.*  The defendant did not comply with the court's order.  Only then did the court act to enforce compliance.

 "Paunesco sought and obtained a preliminary injunction ordering the [Immigration and Naturalization Service] to complete processing his application *before* the September 30 deadline. Under these circumstances, the court properly retained jurisdiction over Paunescu's action for the purpose of enforcing its own preliminary injunction, which the [Immigration and Naturalization Service] had disregarded."  *Lavelle v. U.S. Dep't of Homeland Sec.*, No. 04-0524, 2004 WL 1975935, at *5 (N.D. Cal. Sept. 7, 2004) (emphasis in original); *see also Iddir v. INS*, 301 F.3d 492, 501 n.2 (7th Cir. 2002) ("It would be a different case had the district court ordered the INS to adjudicate the appellants' status *while* the INS maintained the statutory authority to issue the visas.  In such a situation, the INS would be on notice to reserve visas and must complete the task, as ordered, before time expires.  Allowing the INS to claim inability to issue visas at that point would impinge the authority of the court." (emphasis in original)).

By comparison, this court did not order the defendants to issue or reserve a diversity visa before the fiscal year deadline expired.  Araujo Perez did request relief from this court three days

before the end of the fiscal year, and he could not realistically have sought relief earlier.  He had

to wait for the USCIS to act before he could seek relief in court from that action.  The USCIS

issued its denial of his motion for reconsideration on September 17, 2021.  Araujo Perez filed

this action ten days later, a scant three days before the fiscal year ended.  This court promptly

requested a swift response by September 30, 2021, and promptly set a hearing for October 4,

2021.  Even these swift actions could not avoid the mootness problem.  And even if the court

could have reached a decision within three days on the plaintiffs' motion, that would not have

changed the outcome.[1]

To obtain a preliminary injunction, the moving party must demonstrate, in part, "[a]

substantial likelihood of success on the merits."  *Jackson Women's Health Org. v. Currier*, 760

F.3d 448, 452 (5th Cir. 2014) (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)).

Preliminary injunctions are "extraordinary remed[ies] which should not be granted unless the

party seeking [one] has clearly carried the burden of persuasion."  *PCI Transp., Inc. v. Fort*

*Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (quoting *Lake Charles Diesel, Inc. v.*

*Gen. Motors Corp.*, 382 F.3d 192, 196 (5th Cir. 2003)).  It is unlikely that the plaintiffs could

have demonstrated a substantial likelihood of success on the merits based on the argument that

---

[1] Even if this court had reached a decision in this narrow timeframe, it is unlikely that mootness could
have been avoided.  In *Gomez*, the court ordered, on September 4, 2020, the defendants to "undertake
good-faith efforts . . . to expeditiously process and adjudicate DV-2020 diversity visa and derivative
beneficiary applications . . . to eligible applicants by September 30, 2020."  485 F. Supp. 3d at 205.  That
gave the defendants almost four weeks to comply with the district court's order.  Here, if this court found
that the defendants had arbitrarily and capriciously denied Araujo Perez's adjustment of status, the
appropriate action would be to remand to the agency to readjudicate his adjustment of status request.  No
matter how expeditiously the defendants worked to comply with this court's order, even setting aside any
possible delays due to the coronavirus, it is implausible that the USCIS could readjudicate Araujo Perez's
request to adjust status, issue a decision, and conduct any other administrative work necessary to issue the
visa, in the hours before the end of fiscal year 2021.  The defendants' failure to meet the fiscal year
deadline would not be due to a lack of diligence or compliance with this court's order, contrary to the

the "immigration agencies arbitrarily and capriciously disregard[ed] precedential authority: the Board of Immigration Appeals' decision in *Matter of L-K*." (Docket Entry No. 1, at 3).

In *Matter of L-K*, the respondent entered the United States as a nonimmigrant visitor "authorized to remain until September 25, 1993." 23 I&N, Dec. at 678. Like Araujo Perez, the respondent filed an asylum application before her lawful nonimmigrant visitor status expired. Like Araujo Perez, the respondent remained in the United States after her nonimmigrant visitor status expired, relying on her pending asylum application. Like Araujo Perez, the respondent in *Matter of L-K* did not seek to extend or change her nonimmigrant status. Like Araujo Perez, the respondent was then in unlawful status. And, like Araujo Perez, the respondent was later "approved to receive a diversity visa through the fiscal year 2002 lottery" and "submitted an application for adjustment of status . . . based on the availability of the diversity visa." *Id.* Unlike Araujo Perez, however, the respondent's asylum application in *Matter of L-K* had already been "referred . . . to the Immigration Court" before she applied for adjustment of status and had been denied. *Id.* The respondent's appeal of that denial was pending when she submitted her application for adjustment of status. *Id.*

The Board of Immigration Appeals determined that "the respondent [was] ineligible for adjustment of status because her unlawful immigration status was not for 'technical reasons.'" *Id.* at 679. The Board of Immigration Appeals stated that, "once the DHS has acted upon a pending asylum application, the 'technical' reasons for the violation cease to exist, and the applicant may no longer be considered to be out of status for technical reasons." *Id.* at 681; *see also id.* ("Once the DHS acted on the respondent's asylum application by referring it to the

---

defendants' failures in *Gomez* or *Paunescu*. It would simply be a practical reality of the very short time available to adjudicate and issue the diversity visa before the end of the fiscal year.

Immigration Court, the respondent could not be considered out of status 'for technical reasons.'").

The plaintiffs contend that *Matter of L-K* required the USCIS to approve Araujo Perez's application for adjustment of status because, unlike the respondent in *Matter of L-K*, the plaintiffs had "*NOT* been referred to the Immigration Court at all, much less prior to the time they applied for adjustment of status."  (Docket Entry No. 1, at 15 (emphasis in original)).  The Board of Immigration Appeals stated that "the 'technical reasons' for being out of lawful status end when the Department of Homeland Security acts other than favorably on a pending asylum application"; therefore, the "technical reasons" must exist before the agency acts on a pending asylum application.

"In order . . . to prevail on their claim, [Araujo Perez and his family] must establish that the decision of the USCIS was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law.'  'The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.'"  *Kavafoglu v. Nielsen*, No. 4:18-CV-3512, 2019 WL 172865, at *3 (S.D. Tex. Jan. 11, 2019) (quoting 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The issue is whether the agency reached a rational conclusion based on the facts before the agency and the agency's stated reasons for its decision.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

The USCIS twice considered whether *Matter of L-K* required it to approve Araujo Perez's application and derivative applications for adjustment of status.  In its June 2021 denial decision, the USCIS stated:

> In *Matter of L-K-*, the BIA found that the 'technical reasons' for being out of lawful status ends when the DHS acts other than favorably on a pending asylum application.  The BIA further concluded that an 'action' by the DHS does not necessarily require a final adjudication on the merits of an asylum application but includes DHS's referral of an asylum application to the Immigration Court.  Your asylum application, to date, is still pending.  Thus, the BIA, in *Matter of L-K* did not specifically address your situation, in which you initially filed an asylum application while in lawful nonimmigrant status, the nonimmigrant status subsequently expired, and you applied for adjustment of status while your asylum application was and continues to be pending.  USCIS notes, however, that the BIA's observation that "had the drafters of the adjustment regulation intended the pendency of an asylum application to be considered a 'technical reason' for being out of lawful status, such language could easily have been included in the regulation."

(Docket Entry No. 2-1, at 6 (citations omitted)).  The USCIS concluded that *Matter of L-K* did not apply because it addressed only a scenario in which "DHS acts other than favorably on a pending asylum application."

The USCIS repeated this analysis in its denial of Araujo Perez's Motion for Reconsideration, stating:

> [Araujo Perez] [has] no legal basis for a claim that filing [his] asylum application prior the expiration of [his] nonimmigrant status results in an effective extension of that lawful nonimmigrant status. . . .  In *Matter of L-K-*, the BIA determined that a failure to maintain lawful status is not 'for technical reasons' within the meaning of section 245(c)(2) of the Act and the applicable regulations at 8 CFR 1245.1(d)(2)(ii) where the alien filed an asylum application while in lawful nonimmigrant status, the nonimmigrant status expired, and the asylum application was referred to the Immigration Court prior to the time the alien applied for adjustment of status.

(Docket Entry 2-1, at 3).

In *Matter of L-K*, the Board of Immigration Appeals stated that "the [plaintiff's] 'technical reasons' for being out of lawful status end when the Department of Homeland Security acts other than favorably on a pending asylum application."  This might suggest, as Araujo Perez argues, that "technical reasons" for being out of lawful status are present when the Department of

17

Homeland Security has not yet acted on a pending asylum application.  The USCIS is, however, correct that the Board of Immigration Appeals in *Matter of L-K* did not consider the factual scenario present in this case, in which the asylum application remains pending and has not been referred to the Immigration Court.

The Board of Immigration Appeals was careful to cabin its decision in *Matter of L-K* writing that its "holding is narrow and limited to the factual scenario at issue in this case.  In particular, our decision relates only to those situations in which an asylum application was filed while the alien was in nonimmigrant status, the nonimmigrant status subsequently expired, and the asylum application was referred to the Immigration Court by the DHS prior to the time the alien applied for adjustment of status."  23 I&N, Dec. at 682.

The Board of Immigration Appeals also expressly declined in *Matter of L-K* to consider two arguments that the Department of Homeland Security raised as to why a pending asylum application is not a "technical reason" for unlawful status.  The Department of Homeland Security pointed to the regulations defining "technical reasons."  *Id.* at 679.   The regulations provided "as [an] example" of a technical reason "where an applicant establishes that he or she properly filed a timely request to maintain status and the [DHS] has not yet acted on that request."  *Id.* at 679 (quoting 8 C.F.R. § 1245.1(d)(2)(ii)).  The Department argued that "because the example provided [in the regulations] refers to a 'request to maintain status,' rather than a request for any status, the language of the regulation implies that the request must relate to the particular status the applicant already possesses and wishes to 'maintain.'"  *Id.*  The Department also argued that "when a different status, such as asylum status, is requested, any lapse of the initial status is not one 'resulting from' the DHS's action or inaction with regard to that other status."  *Id.*  The Board's decision in *Matter of L-K* "d[id] not reach either argument and

express[ed] no opinion thereon," but it "point[ed] out that both of these arguments carry adverse implications for the ability of aliens to adjust in other contexts, and that the DHS failed to respond adequately to the Board's repeated requests relating to its own practices in this regard." *Id.*

The record reflects that the USCIS twice considered the BIA's decision in *Matter of L-K* and explained why that decision did not apply to the facts of this case.  While some dicta in *Matter of L-K* suggests that the BIA could find that a "technical reason" for unlawful status includes a pending asylum application, the BIA's holding was more limited.  Araujo Perez argues that the USCIS's decision was "arbitrary and capricious" because it failed to explain why it deviated from the "prior policy" of *Matter of L-K*.  (Docket Entry No. 1, at 13–14).  The USCIS, however, correctly stated that it was not deviating from a Board of Immigration Appeals decision, because *Matter of L-K* did not "specifically address [Araujo Perez's] situation, in which [he] initially filed an asylum application while in lawful nonimmigrant status, the nonimmigrant status subsequently expired, and [he] applied for adjustment of status while [his] asylum application was and continues to be pending."  (Docket Entry No. 2-1, at 6).  Araujo Perez has not shown a likelihood of success on the merits for the claim that the "defendants' manner of misinterpreting the BIA precedent in *Matter of L-K* is what . . . [arbitrarily and capriciously] prevent[ed] Plaintiffs' from adjusting status."  (Docket Entry No. 1, at 8).

Although Araujo Perez states in the motion for relief that the "sole" reason that the defendants acted arbitrarily was for their "refus[al] to follow [the] Board of Immigration Appeals' . . . precedent in *Matter of L-K*," (Docket Entry No. 1, at 4), he also raised another argument: that the defendants acted in an arbitrary and capricious manner because they failed to consider an import aspect of the problem in denying the application to adjust status, by failing to

consider that an asylum applicant like Araujo Perez cannot apply to extend nonimmigrant status without making "a material misrepresentation of nonimmigrant intent" on his "Form I-539, Application to Extend/Change Nonimmigrant Status." (Docket Entry No. 1, at 17). Araujo Perez argues that he and his family filed for asylum precisely because they intend to seek immigration status.

The defendants maintain that "the agency has long interpreted 'a request to maintain status' as referring only to a request to renew or change *nonimmigrant* status." (Docket Entry No. 2, at 15 (emphasis added)). The USCIS was consistent with that interpretation in its decision to deny Araujo Perez's application to adjust status, reasoning, in part, that denial was appropriate because Araujo Perez's "application for asylum [was] not designed to maintain, restore, or extend [his] preexisting nonimmigrant status." (*See* Docket Entry No. 2-1, at 6). The USCIS asserted that Araujo Perez "could easily have filed for an extension of [his] authorized stay to keep [the family's] nonimmigrant status while the asylum application is pending." (*Id.*, at 7).

The defendants do not explain how Araujo Perez could "easily have filed" to keep his nonimmigrant status while his asylum application was pending. Lawful nonimmigrant status is reserved for persons temporarily staying in the United States "without the intent to remain permanently." *Dhuka*, 716 F.3d at 153; *see* 8 U.S.C. § 1101(a)(15)(B) (describing a nonimmigrant as "an alien . . . having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure"). A visitor visa is a type of nonimmigrant status. Seeking asylum, by definition, means that the applicant intends to remain in the United States as an immigrant because he or she cannot safely return home. The defendants do not explain how Araujo Perez could have applied for asylum status and extend his nonimmigrant visitor visa status at the same time. The result is

that individuals like Araujo Perez must decide between applying for asylum status and sacrificing their ability to maintain lawful status through the extension of nonimmigrant status, on the one hand, or applying for the temporary extension of nonimmigrant status and postponing the submission of their asylum application, on the other.

Neither the statute nor the regulations expressly require that an individual maintain "nonimmigrant" status. The statute requires an individual to "maintain continuously a lawful status" to be eligible to adjust status. 8 U.S.C. § 1255(c). "Asylee status" is a form of "lawful status." *See* 8 C.F.R. § 245.1(d)(1). The regulation defines a technical violation as one "for example, where an applicant establishes that he or she properly filed a timely request to maintain status and [USCIS] has not yet acted on that request." 8 C.F.R. § 245.1(d)(2)(ii). The regulation does not specifically require an applicant to submit a timely request to maintain "nonimmigrant" status, but it does require a timely request to maintain "lawful" status.

Assuming, however, that the defendants' interpretation is reasonable, the interpretation still leaves asylum applicants who are typically present in the United States without a statutory pathway to adjust immigration status while their asylum applications are pending.[2] Section 1255 sets out the eligibility requirements for adjusting status from nonimmigrant to lawful permanent resident. 8 U.S.C. § 1255(c). Araujo Perez is a nonimmigrant who outstayed lawful nonimmigrant status and does not seek adjustment to any nonimmigrant status.

---

[2] There are some limited exceptions in which an asylum applicant, who has otherwise failed to maintain lawful status, can still adjust status. These exceptions include cases involving immediate relatives of U.S. citizens, certain special immigrants, and certain employment-based applicants under 8 U.S.C. § 1255(i) and (k). "[Section] 1255(i) grants the Attorney General discretion to 'adjust the status' of those who have entered the country illegally and afford them lawful residency." *See De Niz Robles v. Lynch*, 803 F.3d 1165, 1167 (10th Cir. 2015). Section 1255(k) allows beneficiaries of an employment visa petition to adjust status, even if they have failed to maintain continuous lawful status, if they have not accumulated

There are different adjustment of status requirements for asylees.  "[A]n asylee adjusts status to that of a lawful permanent resident under 8 U.S.C. § 1159(b), which does not require the applicant to have maintained status since entry."  (Docket Entry No. 2, at 17).  Under § 1159(b), an asylee must be "physically present in the United States at least one year after being granted asylum" before applying for adjustment of status.  Araujo Perez is not in asylee status.  For six years, he has been in neither lawful nonimmigrant status nor asylum status, because his asylum application remains pending.  The result is that he cannot apply to adjust status to permanent lawful resident, through the diversity visa, or as an asylee, following one year of physical presence.  All he can continue to do is wait for the USCIS to adjudicate his asylum application.  In the meantime, his son has spent most of his life in the United States.

The absence of clear guidance for if, and when, asylum applicants can adjust status; the complexity of the regulations; and the agonizingly slow processing of asylum applications, have combined to produce this and similar cases.  The plaintiffs in these cases arrived to the United States on their nonimmigrant visas, applied for asylum while in the United States on nonimmigrant status, and remained in the United States long after their nonimmigrant status expired.  While their asylum applications were still pending, these plaintiffs entered the diversity visa lottery and were invited to apply for a diversity visa.  The plaintiffs' applications to adjust status—a prerequisite to receive the diversity visa—were all denied, because the plaintiffs were not in lawful nonimmigrant status when they applied to adjust status, their asylum applications did not confer lawful status, and their asylum applications were not a "technical reason" for failing to maintain lawful status.  It is not surprising, given the complexity of the regulations and

---

more than 180 days out of lawful status before applying for adjustment.  *See, e.g.*, *Xiao Lu Ma v. Sessions*, 907 F.3d 1191, 1196 (9th Cir. 2018).  None of these exceptions apply in this case.

the lack of guidance from circuit courts, that district courts have divided in deciding whether agency officials have acted arbitrarily in denying adjustment of status to asylum applicants who have applied for the diversity visa after their nonimmigrant status expired.

Four district courts have held that "[i]t is clear that a technical violation occurs when the USCIS fails to timely act on a request to maintain or extend an existing status," and that the agency's failure to act on a different form of lawful status—asylee status as opposed to nonimmigrant status—is not a technical violation.   *Kavafoglu v. Nielsen*, No. 4:18-cv-3512, 2019 WL 172865, at *3 (S.D. Tex. Jan. 11, 2019); *Ermuraki v. Cuccinelli*, No. 4:19-CV-4169, 2020 WL 3402855, at *4 (S.D. Tex. June 19, 2020); *Duque Mendez v. Cuccinelli*, 467 F. Supp. 3d 1249, 1260–61 (S.D. Fla. 2020); *Metwaly v. Barr*, No. 1:20-CV-1289-MLB, 2021 WL 857744, at *6 (N.D. Ga. Mar. 8, 2021).   These courts have held that the plaintiffs could not "utilize their status as asylum seekers to bridge the divide between their expired visitor status and that of [lawful permanent resident.]."   *Metwaly*, 2021 WL 857744, at *6 (quoting *Kavafoglu*, 2019 WL 172865, at *4); *Duque Mendez*, 467 F. Supp. 3d at 1260.

Two district courts have disagreed.   In *Somaysoy v. Ow*, No. 8:20-01609-JWH-ADSX, 2021 WL 1897874 (C.D. Cal. Apr. 28, 2021), the court held that "a person who applies for asylum while on a nonimmigrant visa and then allows that visa to lapse is considered to have failed to maintain lawful status for technical reasons—and, therefore, to be eligible to adjust status—until DHS grants, denies, or refers to an immigration judge his asylum application."   *Id.* at *4.   The court reasoned that if the asylum application "is ultimately granted, then 'the alien will be considered to have never been in unlawful status,' so the temporary lapse in status is due to technical reasons on USCIS's part."   *Id.*   In *Sayin v. United States*, No. 1:18-CV-643-LY, 2018 WL 4624827 (W.D. Tex. Sept. 26, 2018), the court wrote, "[i]t seems . . . that the ultimate

23

'technicality' is to be physically present in the United States with the permission of USCIS while pursuing the significant goal of asylum, but because of the expiration of permission to be present in the United States pursuant to a relatively low-level permission to visit, the one who is legally physically present is also in an unlawful status in the eyes of the same USCIS." *Id.* at \*3.

Even if this court agreed with *Sayin*, however, this court could not order the relief granted in that case: an order to the defendants "to immediately reopen, adjudicate, and approve Plaintiffs' Form I-485 Applications to Adjust Status and issue Plaintiffs visas before the end of the 2018 fiscal year on September 30, 2018." *Sayin*, No. 18-CV-643-LY (W.D. Tex.) (Docket Entry No. 27). The court in *Sayin* issued that order before the end of the fiscal year. Here, by contrast, the court cannot provide the same relief to Araujo Perez and his family, because their claims became moot when the 2021 fiscal year ended.[3] Mootness unavoidably resolves this case.

Araujo Perez argues, finally, that even if his claim is moot, the court may still retain jurisdiction under an exception to mootness for claims that are "capable of repetition, yet evading review." (Docket Entry No. 6, at 9). "Under this exception, '[a]lthough a case may be technically moot, a federal court may nevertheless retain jurisdiction if a continuing controversy exists or if the challenged problem is likely to recur or is otherwise capable of repetition.'" *Meadows v. Odom*, 198 F. App'x 348, 351 (5th Cir. 2006) (quoting *Vieux Carre Prop. Owners v. Brown*, 948 F.2d 1436, 1447 (5th Cir. 1991)). To show that a case is capable of repetition, the

---

[3] Araujo Perez argues that his claim is not moot because another form of "adequate relief" is available: "Congress, under the Plenary Power Doctrine, may act on behalf of Plaintiffs and issue their diversity visas." (Docket Entry No. 6, at 11, 12). That Congress might act to grant the plaintiffs diversity visas is independent of any relief that this court could grant. Mootness examines only whether the court can grant the litigant relief. *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020).

plaintiff must "show either a 'demonstrated probability' or a 'reasonable expectation,' that they will 'be subjected to the same [unlawful governmental] action again.'   A 'mere physical or theoretical possibility' is not sufficient to satisfy this prong of the exception." *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010) (internal citations omitted).

If Araujo Perez and his family reapply for adjustment of status to permanent lawful resident at a later date, it is possible that they will meet the same outcome—denial of adjustment of status—so long as the USCIS continues to assert that a pending asylum application is not a "technical reason" for an applicant's failure to maintain lawful status.   If or when Araujo Perez might reapply for adjustment of status—if at all—is, however, speculative.   To be eligible for a diversity visa, Araujo Perez must reenter the diversity visa lottery for the next available fiscal year.   If Araujo Perez reenters the diversity visa lottery at that time, there is no guarantee that he will be reinvited to apply.   Millions apply for the lottery each year, competing for the allotted 55,000 visas.   It is also certain that Araujo Perez will not be able to apply for a diversity visa for fiscal year 2023, as Venezuelan natives are ineligible to apply for that year, because "more than 50,000 natives of Venezuela have immigrated to the United States in the previous five years." (Docket Entry No. 6, at 6).   Diversity visas are unavailable to natives of countries from which more than 50,000 natives have immigrated to the United States in the past five years.   *See* 8 U.S.C. § 1153(c).   Venezuela is one of those countries.[4]

Araujo Perez has also not demonstrated that he will be eligible to adjust status through any other type of visa.   At the October 4, 2021, motion hearing, Araujo Perez represented to this

---

[4] *See* U.S. Dep't of State, *Instructions for the 2023 Diversity Immigrant Visa Program (DV-2023)*, https://travel.state.gov/content/dam/visas/Diversity-Visa/DV-Instructions-Translations/DV-2023-Instructions-Translations/DV-2023-Instructions-English.pdf.

court that, other than through the diversity visa, he has no other avenue available to adjust status, such as seeking adjustment of status based on employment or through sponsorship by an immediate relative who is a U.S. citizen.   Araujo Perez has not shown a "demonstrated probability" that he will again apply for adjustment of status in the foreseeable future.   There is no "demonstrated probability" that he will again be subjected to the same allegedly unlawful government action.   *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).   Because the case is moot and no exception to mootness applies, dismissal is required.[5]

## III.    Conclusion

The defendants' motion to dismiss the plaintiffs' complaint is granted.   The plaintiffs' motion for a preliminary injunction is denied.

An order of dismissal will be separately entered.

SIGNED on November 1, 2021, at Houston, Texas.

_Lee H. Rosenthal_

_____

Lee H. Rosenthal
Chief United States District Judge

---

[5] Even if this case were not moot, dismissal might also be required for lack of jurisdiction for another reason.   The Fifth Circuit has previously held that "district courts do not have jurisdiction to review a denial of adjustment of status." *Velasquez v. Nielsen*, 754 F. App'x 256, 260–61 (5th Cir. 2018); *Cardoso v. Reno*, 216 F.3d 512, 517–18 (5th Cir. 2000).   A court may review a denial of adjustment of status only after all administrative remedies are exhausted. *Mendoza v. Wolf*, No. H-20-2022, 2020 WL 7123166, at *4 (S.D. Tex. Dec. 4, 2020).   "Because plaintiffs' administrative remedies include the right to *de novo* review of their applications to adjust status during their removal proceedings," the court lacks subject matter jurisdiction when, in this case, the plaintiffs have not yet been placed in removal proceedings. *Id.* at *4; *see also Cardoso*, 216 F.3d at 518.   The Fifth Circuit has, however, expressed uncertainty about whether the Supreme Court's recent decision in *Nasrallah v. Barr*, 140 S.Ct. 1683 (2020), which defined the statutory term "final order of removal," instructs that courts can exercise jurisdiction to review denials of adjustment of status before the removal proceedings. *See Nolasco v. Crockett*, 978 F.3d 955, 956 (5th Cir. 2020).   Mootness makes it unnecessary to address this issue.